**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**------------------------------------------------------------X**

**DONALD ELLIOTT, JR.,**

                                **Plaintiff,**

               **-against-**

**NESTLE WATERS NORTH AMERICA INC.,**

                                **Defendants.**

**------------------------------------------------------------X**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RONNIE ABRAMS:**

**13-CV-06331 (RA)(SN)**

**REPORT AND**
**RECOMMENDATION**

          Before the Court is the defendant Nestle Waters North America Inc.'s ("NWNA") motion

to dismiss the complaint, alleging claims for wrongful termination, filed by the *pro se* plaintiff

Donald Elliott, Jr. ("Elliott") pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule

12(b)(6)"). Because the Court finds that all of the possible claims in Elliott's complaint are

barred by the relevant statues of limitations, the Court recommends that NWNA's motion to

dismiss be GRANTED. The Court further recommends that Elliott be granted leave to amend his

complaint as to only a breach of contract claim, but denied leave to amend on all other claims.

## BACKGROUND

**I.      Factual Background**[1]

          Donald Elliott, Jr. began his employment as a delivery truck driver with the defendant

NWNA, in Kearny, New Jersey, on June 22, 2009. Elliott states that his "station was in New

---

[1] The following alleged facts are taken from the plaintiff Donald Elliott, Jr.'s complaint, opposition,
supplemental opposition, and the documents he has attached thereto. The Court accepts Elliott's
allegations as true for the purposes of this motion to dismiss under Rule 12(b)(6). See Harris v. Mills, 572
F.3d 66, 71 (2d Cir. 2009).

Jersey," but that he paid New York taxes (Compl.[2] at 10)[3] and, though he would pick up his truck in New Jersey (Opp'n at 105), he "worked in the New York zone" (Supplemental Opposition ("Supp. Opp'n") at 4). Soon after his employment began, Elliott alleges that NWNA ordered him to engage in "upselling," which he describes as the illegal practice of delivering more products than the customer ordered so the customer could be charged a higher amount. According to Elliott, NWNA engaged overtly in this practice, holding "upsell contests" with awards for the employees who sold the most products that the customer did not order. Elliott refused to participate in the practice and questioned management about it. As a result, he claims he was verbally abused and denied breaks for meals. Elliott sent an email on August 6, 2009,[4] to human resources personnel reporting the "upselling" and the retaliatory treatment he had been receiving. He states that after sending the email, the retaliatory harassment continued, including being "written up for being slow." (Opp'n at 12.)

On July 12, 2010, Elliott sustained an on-the-job injury in a motor vehicle accident in New York City. He was taken to the emergency room, where a doctor treated him and told him to rest for two days before returning to work. Elliott returned to work that day to ask his supervisor to fill out an accident report, but was told to go home and take the two days to recuperate. Elliott returned to work on July 14, 2010, intending to file an accident report so he

---

[2] The complaint is contained within the Notice of Removal. Exhibit A to the Notice of Removal contains completed forms for the state court summons and the complaint, followed by a typed two-page document titled "Wrongful Termination" containing a narrative of the allegations, followed by a four-page list of exhibits and a signed verification page. The Court refers to these documents collectively as the "complaint."

[3] For clarity, all citations in this order to pages in the record will be identified by the electronic filing page number at the top-right of each page.

[4] Elliott identifies the date of the email as "8/6/2010" on page 10 of his complaint, but as "8/6/2009" on page 9 of his complaint and page 5 of his opposition. The Court assumes that August 6, 2009, is the correct date of the email.

could submit a claim for workers' compensation for the two days he stayed home. Elliott's supervisor sent him to the company's health care provider, Concentra, and he returned that day with work restrictions for "light duty," which included "no . . . sitting for long periods of time." (Compl at 12.) Despite these restrictions, Elliott was ordered the following day, July 15, to drive for 10 straight hours.

On July 26, 2010, Elliott for the third time requested an accident report from NWNA, but did not receive a response. He also on that day informed one of his supervisors that he would need an MRI and provided NWNA with a letter from his Concentra doctor recommending two weeks of physical therapy. On July 27, 2010, NWNA terminated Elliott's employment, citing his poor attendance record as cause.[5] Elliott alleges that on several of the days cited by NWNA as absences, he was either excused or involuntarily sent home due to illness or medical treatment for his on-the-job injury. (See Opp'n at 7-10 (listing dates for which he was not initially charged absences because he was excused but which were then cited as absences to support the grounds for his termination).) Elliott states that his termination on this ground violated company attendance policy, which provided that if an employee presented a doctor's note, any missed days within the timeframe stated in the note would be counted collectively as one absence. Elliott also alleges that he was "charged a no show" and thus had his pay improperly withheld for time that he spent at doctor appointments ordered by NWNA. (Opp'n at 8-9.) On August 4, 2010, NWNA filed Elliott's accident report with its insurance company.

Elliott appealed his termination through NWNA's internal process, but it was denied in September 2010. NWNA, according to Elliott, generally did not comply with its appeals policy

---

[5] Elliott indicates that he was an "at-will employee" but that NWNA has "written policies that require good cause to fire [an employee]." (Supp. Opp'n at 4.)

and, specifically in violation of the policy, denied his requests for a human resource representative to assist in his appeal. Elliott complains that, though he received a termination letter on July 27, 2010, he does not believe it was legally binding or official.

In addition to arguing that his termination was motivated by his speaking out about the "upselling" practice, Elliott indicates that his injury was also a motivating factor, and NWNA used it to further retaliate against him. To interfere with Elliott's ability to obtain workers' compensation, NWNA allegedly refused to file the accident report "in the allowed time" (Opp'n at 15) and caused delay by erroneously reporting to the insurance company that his workers' compensation claim was based in New Jersey, rather than in New York. Elliott makes similar allegations as to Concentra's failure to report the accident or provide necessary paperwork, and implies NWNA's collusion with Concentra. Concentra's delay allegedly prohibited Elliott from "getting my legal right to FMLA from DHL," his concurrent employer at the time. (Opp'n at 6, 16.)

Elliott states that, "because of the actions of Nestle Waters leadership I was denied workers' compensation and medical support for almost two years [and] was not paid [N]ew York workers' compensation or given medical assistance for my car accident until [M]ay of 2012." (Opp'n at 15-16.) Specifically, Elliott alleges that the paperwork sent by NWNA to the New York Workers' Compensation Board, which erroneously stated that Elliott's claim was accepted and established in New Jersey, caused his workers' compensation case to be delayed by two years. (See Supp. Opp'n at 4 (citing Exhibit Z, a letter dated February 8, 2011, from the New York Workers' Compensation Board stating that it received a form from either NWNA or the insurance carrier requesting to have Elliott's claim closed because it had been accepted in New Jersey, but concluding that "[t]he Board cannot close the case because the claimant has contacted

4

the Board by phone and wants the claim to be pursued in New York State since he is alleging that this claim is a New York claim").) Elliott's workers' compensation case, which he identifies by the case number G0323064, "was confirmed in May 2012." (Id. at 5.) Elliott further contends that because of NWNA's failure to file timely an accident report and the inaccurate information it provided to its insurance carrier and/or the New York Workers' Compensation Board, "it took more than the 300 days allowed by the EEOC to file a case." (Id. at 4.)

Finally, Elliott submits the following documents demonstrating the different claims he has asserted since his termination: (1) transcript excerpts from hearings on October 14 and November 30, 2011, before the New York Workers' Compensation Board; (2) an October 25, 2010, letter from a New Jersey lawyer representing Elliott, when it was believed his claim was before the New Jersey Workers' Compensation Board, to NWNA's insurance carrier stating Elliott's intent to sue NWNA under New Jersey's Law Against Discrimination and Conscientious Employee Protection Act;[6] and (3) a May 1, 2011, New York Workers' Compensation Board discharge and discrimination complaint. The New York Workers' Compensation Board issued decisions on March 1 and November 14, 2012, dismissing Elliott's claims.

## II.  Procedural Background

On July 26, 2013, Elliott filed his complaint in the New York Supreme Court for the County of New York against NWNA, alleging wrongful termination. On September 10, 2013, NWNA removed this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1332(a)(1). NWNA moved to dismiss Elliott's complaint under

---

[6] Elliott characterizes this letter as "my first attempt at a lawsuit for harassment and wrongful termination." (Opp'n at 23.) It is not clear whether this lawsuit was ever filed.

Rule 12(b)(6) on September 16, 2013. Along with its motion, NWNA filed the affirmation of Ian W. Siminoff, which attached the complaint and the NWNA Employee Agreement signed by Elliott. Elliott opposed the motion on October 11, 2013, attaching various documents, and, on October 16, 2013, filed a supplemental letter of opposition requesting permission to submit additional documents, which he attached. NWNA filed its reply on October 29, 2013, along with a second affirmation of Ian W. Siminoff, which attached two decisions by the New York Workers' Compensation Board in connection with a claim Elliott had submitted.

This action was referred to me for a report and recommendation on the motion to dismiss on January 9, 2014.

## JURISDICTION

A defendant may remove a case from a state court to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The defendant removing the action has the burden of establishing that removal is proper. See Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 100 (2d Cir. 2004). A district court must remand the action to state court if it determines that it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). "[S]tatutory procedures for removal are to be strictly construed." Syngenta Crop Prot., Inc. v. Henson, 537 U.S. 28, 32 (2002); see In re Methyl Tertiary Butyl Ether Prods. Liab. Litig., 488 F.3d 112, 125 (2d Cir. 2007) ("[W]e have held that out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolv[e] any doubts against removability.") (internal quotation marks omitted).

In this case, subject matter jurisdiction is based exclusively on the diversity of parties. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between

. . . citizens of different States." 28 U.S.C. § 1332(a)(1); see Wis. Dep't of Corr. v. Schacht, 524

U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity

'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no

plaintiff and no defendant who are citizens of the same State."). The party seeking to invoke

diversity jurisdiction must allege facts demonstrating that complete diversity of citizenship exists

between all parties to the action. Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157,

160 (2d Cir. 1998). With respect to diversity jurisdiction, a corporation "is a citizen of any State

by which it has been incorporated and of the State where it has its principal place of business."

28 U.S.C. § 1332(c); see Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010). "With respect to the

amount-in-controversy element of diversity jurisdiction, the removing party must carry that

burden by 'proving that it appears to a 'reasonable probability' that the claim is in excess of

[$75,000].'" Bellocchio v. Enodis Corp., 499 F. Supp. 2d 254, 255 (E.D.N.Y. 2007) (quoting

United Food & Commercial Workers Union v. CenterMark Properties Meriden Square, Inc., 30

F.3d 298, 303-04 (2d Cir. 1994)). There is a "rebuttable presumption that the face of the

complaint is a good faith representation of the actual amount in controversy." WoldeMeskel v.

Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999).

　　　　First, NWNA has shown properly that Elliott is a resident of New Jersey and that, though

the NWNA office at issue is located in New Jersey, NWNA's principal place of business is in

Connecticut,[7] thus establishing complete diversity between the parties. Second, the Court finds a

---

[7] The Court finds that, under the "nerve center" test, which is applicable here, Hertz Corp., 559 U.S. at
80-81, NWNA's principal place of business is Connecticut. Cf. Specialized Transp. of Tampa Bay, Inc. v.
Nestle Waters N. Am., Inc., 06 Civ. 421-T-30 (EAJ), 2008 WL 2414080, at *3 (M.D. Fla. June 11, 2008)
(finding NWNA's principal place of business to be Connecticut).

reasonable probability that Elliott's claims, which could warrant compensatory damages of lost income for breach of contract and compensatory plus punitive damages for violation of New Jersey's whistleblower laws, are in excess of $75,000.[8] The Court therefore has jurisdiction over this matter under 28 U.S.C. § 1332(a)(1).

### LEGAL STANDARD

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

The Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. See

---

[8] Elliott seeks damages in the amount of $10 million in his complaint.

 Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

When the plaintiff is proceeding *pro se*, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted); see Haines v. Kerner, 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.

## DISCUSSION

## I.    Preliminary Matters

At the outset, the Court addresses the procedural requests made by both parties with respect to their submissions on this motion.

### A.    Elliott's Supplemental Opposition

Elliott asks the Court to accept his supplemental opposition and attached documents, which he submitted on October 16, 2013. In this district, unless otherwise ordered by the court, any opposition to a civil motion "shall be served within fourteen days after service of the moving papers." Local Civ. R. 6.1(b). In its reply, NWNA argues that Elliott's untimely supplement to his opposition should not be considered.

"[*P*]*ro se* status [does not] excuse a party from meeting deadlines imposed by the Court to file [an] opposition." Martinez v. Ravikumar, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008). Nevertheless, the Court has the inherent authority to manage the schedules of its cases, Am.

Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P., 03 Civ. 6913 (GEL), 2006 WL
1084392, at *3 n.5 (S.D.N.Y. Apr. 20, 2006), and must adopt a flexible approach toward a *pro se*
plaintiff's submissions when faced with a Rule 12(b)(6) motion to dismiss, Saidin v. N.Y.C.
Dep't of Educ., 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). Given Elliott's *pro se* status, the fact
that his supplement was filed only five days after his opposition, and the significance of
NWNA's Rule 12(b)(6) motion, the Court grants Elliott's request and considers his supplemental
opposition. Cf. Posr v. City of New York, 11 Civ. 986 (PGG), 2012 WL 4378049, at *6 n.5
(S.D.N.Y. Sept. 25, 2012) ("In light of Plaintiff's *pro se* status, and the nature of Defendants'
motions [to dismiss], the Court has considered Plaintiff's untimely opposition papers."); Howard
v. Municipal Credit Union, 05 Civ. 7488 (LAK), 2008 WL 782760, at *4 (S.D.N.Y. March 25,
2008) (accepting an opposition filed "several months" late due to "the strong policy disfavoring
dismissal of *pro se* pleadings without affording them their strongest possible construction").

      **B.**    **Extrinsic Documents**

      Both parties submit documents that were not attached to Elliott's complaint and ask the
Court to consider them. In the complaint, Elliott provides a four-page list of 12 exhibits, along
with a description of each. The exhibits, however, are not attached to the complaint. In its motion
to dismiss, NWNA asks the Court to consider the NWNA Employee Agreement signed by
Elliott. Along with his opposition, Elliott submitted the 12 exhibits that were referenced in the
complaint, in addition to 11 new exhibits that were not mentioned. Elliott then attaches three
additional exhibits to his supplemental opposition. Finally, in its reply, NWNA requests that the
Court consider two decisions by the New York Workers' Compensation Board resolving Elliott's
workers' compensation claim, which NWNA attaches to an affirmation.

"If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. Proc. 12(d). Thus, the Court must determine whether it can properly consider the submitted documents in resolving this motion, or, if it cannot, whether the documents should be excluded or whether the Court should consider them and convert this motion to dismiss to a motion for summary judgment under Rule 56. See Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria, 265 F.R.D. 106, 122 (S.D.N.Y. 2010).

When ruling on a Rule 12(b)(6) motion, a court may not consider evidence submitted by the parties, but rather "must confine itself to the four corners of the complaint." Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008) (internal quotation marks omitted). The "four corners of the complaint" includes "any documents attached to that pleading or incorporated into it by reference, any documents that are 'integral' to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice." BLT Rest. Grp. LLC v. Tourondel, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012); see Madu, Edozie & Madu, P.C, 265 F.R.D. at 122. Courts have also stated that they may consider "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993); see Rosario v. Local 1106 Transp. Works of Am., 13 Civ. 400 (PKC), 2014 WL 297246, at *3 (E.D.N.Y. Jan. 27, 2014) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)). The Court of Appeals for the Second Circuit has clarified, however, that "mere notice or possession is not enough" and that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal

motion." <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).

As a first step, it is necessary to clarify Elliott's allegations in order to determine which documents were integral to and relied upon by Elliott in drafting his allegations. Thus, to ascertain the entirety of Elliott's pleading, the Court first determines whether Elliott's additional submissions can be considered. Generally, "[c]ourts in this Circuit have made clear that a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." <u>Madu, Edozie & Madu, P.C</u>, 265 F.R.D. at 122-23 (citing <u>Wright v. Ernst & Young LLP</u>, 152 F.3d 169, 178 (2d Cir. 1998)). Nevertheless, "the policy reasons favoring liberal construction of *pro se* complaints permit a court to consider allegations of a *pro se* plaintiff in opposition papers on a motion where . . . those allegations are consistent with the complaint." <u>Rodriguez v. McGinnis</u>, 1 F. Supp. 2d 244, 246-47 (S.D.N.Y. 1998) (collecting cases). Setting aside the attached documents, the Court finds it appropriate to consider the factual allegations contained in Elliott's opposition and supplemental opposition because they are consistent with the complaint and clarify, but do not add to, his claims.

With respect to the documents submitted with his opposition, it is clear that the Court may consider the first 12 exhibits, which are fully described in the complaint's exhibit list and which he thus plainly relied on in drafting his complaint. These documents are "incorporated by reference" because the complaint makes "a clear, definite and substantial reference to the documents." <u>Helprin v. Harcourt, Inc.</u>, 277 F. Supp. 2d 327, 330-31 (S.D.N.Y. 2003). Broadly, the 14 new exhibits (11 attached to the opposition; three attached to the supplemental opposition) that are not referenced in the complaint's exhibit list consist of: (1) medical and insurance documents regarding Elliott's on-the-job injury and his difficulty receiving the necessary

12

paperwork and medical treatment, including a letter from the New York Workers' Compensation Board to NWNA's insurance carrier demonstrating the confusion over whether Elliott's claim is being adjudicated in New Jersey or New York; (2) documents related to his work absences; (3) transcript excerpts from Elliott's NWNA appeals hearing and his hearings before the New York Workers' Compensation Board, along with his discrimination claim submitted to the New York Workers' Compensation Board; and (4) a letter from Elliott's former attorney repeating the allegations made in the complaint and helping to establish a timeline for those allegations. These documents are all consistent with and "integral" to Elliott's complaint; they appear to have been relied upon by Elliott in framing his complaint and help to clarify the statements therein. See Madu, Edozie & Madu, P.C, 265 F.R.D. at 122 (quoting Chambers, 282 F.3d at 153) ("To be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon th[e] documents in framing the complaint.'"). Thus, Elliott's extrinsic documents satisfy the standard for "incorporation by reference." Further, were it not clear that these documents were incorporated by reference, the Court would find them appropriate to consider in light of the policy permitting courts to consider facts alleged for the first time in a *pro se* plaintiff's opposition to a motion to dismiss, Rodriguez, 1 F. Supp. 2d at 246-47, and the mandate that "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). The Court thus finds that all extrinsic allegations and documents submitted by Elliott in his opposition and supplemental opposition should be "deemed part of the pleading" and thus appropriate to consider here. Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).

Next, the Court addresses NWNA's request for the Court to consider the NWNA Employee Agreement ("Agreement") signed by Elliott and the two decisions by the New York Workers' Compensation Board resolving Elliott's workers' compensation claim. According to NWNA, the Court may consider the Agreement in light of Elliott's "references to and reliance on NWNA's employment policies." (Mot. at 9 n.3 (citing Compl. at 2, 3, 7).) The cited references in Elliott's complaint appear to concern NWNA's polices as to its appeals process. As Exhibit C to his opposition, Elliott submits an excerpt of NWNA's "Appeals Kit," which he describes in the exhibit list as the "company policy." (See Opp'n at 18, 30-31.) Elliott also references and relies on NWNA's policies regarding attendance and medical treatment for on-the-job injuries. (See Opp'n at 7, 9 (purporting to attach such policies as an exhibit, but which are not attached). None of the policies referenced by Elliott is contained in the Agreement. While Elliott most likely knew about and possessed the Agreement when he drafted his complaint, there is no indication that he either referenced it in the complaint or relied upon it to draft his complaint. See Chambers, 282 F.3d at 153. Therefore, because it is outside the scope of the complaint, the Court cannot consider the Agreement in resolving NWNA's motion to dismiss. Additionally, the Court finds that the Agreement would not be sufficiently significant to its recommendation on this motion and thus declines to convert this Rule 12(b)(6) motion to a Rule 56 motion for summary judgment.

The Court, however, finds that it may consider the two decisions by the New York Workers' Compensation Board submitted by NWNA. Elliott references his case before the New York Workers' Compensation Board throughout his pleadings and attaches his claim and excerpts from the hearings to his pleadings. These documents are thus "integral to the plaintiff's allegations even if not explicitly incorporated by reference." BLT Rest. Grp. LLC, 855 F. Supp.

at 15. Alternatively, the Court may properly take judicial notice of the decisions to the extent that they establish that such decisions were rendered, though not to establish the truth of any matter asserted in the decisions. See Svensson v. Securian Life Ins. Co., 706 F. Supp. 2d 521, 534 n.18 (S.D.N.Y. 2010) ("The Court . . . properly can take judicial notice of the Workers' Compensation Board's decision. . . ."); Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 457 n.7 (S.D.N.Y. 2011) (taking judicial notice of an administrative agency's decision where the plaintiff only included his administrative claim in his complaint, finding that "[a]mong the matters of which courts may take judicial notice are decisions of an administrative agency") (internal quotation marks and citation omitted); cf. Kramer v. Time Warner, Inc., 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

## II. Choice of Law

NWNA argues that New Jersey law governs this action. Elliott does not object to NWNA's argument or raise a choice of law issue, but he does allege facts as to his relationship with New York in order to support his substantive claims and to show that his lawsuit was properly filed in New York state court.

"Where the parties fail to raise the issue of choice of law, the Court need not raise the issue *sua sponte,* and the parties are deemed to have acquiesced in the application of the law of the forum." Keles v. Yale Univ., 889 F. Supp. 729, 733 (S.D.N.Y. 1995), aff'd, 101 F.3d 108 (2d Cir. 1996); see Lehman v. Garfinkle, 08 Civ. 9385 (SHS)(DF), 2009 WL 2973207, at *6 n.11 (S.D.N.Y. Sept. 16, 2009), adopting report & recommendation (stating, in an action brought by a *pro se* plaintiff, that, "[a]lthough [the jurisdictional facts] could potentially raise choice of law

issues," the fact that all the parties' motion to dismiss submissions cited only New York law or were "silent on the choice of law question" constituted "'implied consent . . . sufficient to establish choice of law'") (quoting Khubani v. Ionic White, Inc., 05 Civ. 3706 (DC), 2008 WL 878717, at *1 (S.D.N.Y. Apr. 3, 2008)). Nevertheless, "[submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." Triestman, 470 F.3d at 474 (emphasis and internal quotation marks omitted). Because Elliott's opposition suggests an argument as to the applicability of New Jersey law versus New York law, the Court finds it appropriate to apply a choice of law analysis.

Where a case is before a federal court on diversity jurisdiction, the court will determine which state's law governs by applying the choice of law rules of the forum in which the court sits. See Schwartz v. Liberty Mut. Ins. Co., 539 F.3d 135, 147 (2d Cir. 2008) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)) ("The district court was sitting in diversity, and so it properly applied the choice of law rules of New York, the forum in which it sits."). "Under New York choice of law principles, 'the law of the jurisdiction having the greatest interest in the litigation will be applied' to tort claims." Phillips v. Reed Grp., Ltd., 07 Civ. 3417 (RO)(DF), 2013 WL 3340293, at *29 (S.D.N.Y. July 1, 2013), adopting report & recommendation (quoting GlobalNetFinancial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 383 (2d Cir. 2006)). Under this interest analysis approach, the salient factors "'are, almost exclusively, the parties' domiciles and the locus of the tort.'" White v. ABCO Eng'g Corp., 221 F.3d 293, 301 (2d Cir. 2000) (quoting Schultz v. Boy Scouts of America, Inc., 65 N.Y.2d 189, 197 (1985)).

The primary facts militating in favor of applying New Jersey law are that Elliott is a domiciliary of New Jersey; that his NWNA work station was in New Jersey; that he would pick

up his truck in New Jersey to start his daily deliveries; and that all the events regarding his termination, including being handed the termination letter and going through the appeals process, presumably occurred at the NWNA office in New Jersey. The facts favoring application of New York include that his on-the-job injury (the source of many of his allegations) occurred in New York; he worked in the "New York zone" and paid only New York taxes; and his worker compensation claims were filed and adjudicated in New York.

Because Elliott is alleging his claim under a tort theory of wrongful termination, the parties' domiciles and the locus of the tort are given the greatest consideration. Elliott is domiciled in New Jersey and the relevant branch of NWNA is located in New Jersey. While many of the facts underlying Elliott's claim occurred in New York (e.g., the "upselling," the injury, the workers' compensation claims and hearings), the tort itself is based on the conduct of NWNA, all of which, including the termination itself, presumably occurred at the New Jersey office. Additionally, New Jersey has a greater interest in the enforcement of its laws to protect its citizens from unlawful conduct by employers residing in its state. Therefore, the facts weigh strongly in favor of finding New Jersey to have the greater interest in applying its law. With respect to Elliott's claims arising under state law, the Court will thus apply the law of New Jersey.

## III.    Wrongful Termination

"'In New Jersey, an employer may fire an employee for good reason, bad reason, or no reason at all under the employment-at-will doctrine. An employment relationship remains terminable at the will of either an employer or employee, unless an agreement exists that provides otherwise.'" Russelman v. ExxonMobil Corp., 12 Civ. 752 (RBK)(AMD), 2012 WL 3038589, at *3 (D.N.J. July 25, 2012) (quoting Witkowski v. Thomas J. Lipton, Inc., 136 N.J.

385, 643 (N.J. 1994)). This doctrine, however, is limited by several sources of law under which Elliott's claims may be construed. As discussed below, Elliott's complaint should be dismissed under any potential theory because his claims are either barred by the applicable statute of limitations or because he fails to allege facts sufficient to state a claim on which relief can be granted. NWNA's statute of limitations defense is appropriate in its motion to dismiss because the ground for the defense appears on the face of the complaint.[9] See Staehr, 547 F.3d at 425.

### A. Public Policy and Retaliation

The Court first interprets Elliott's allegations as claims under New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19(1-8) ("CEPA"). CEPA "is intended to encourage employees to speak up about unsafe working conditions that violate the law or public policy and to provide protection for those who do so." Donelson v. DuPont Chambers Works, 206 N.J. 243, 255-56 (2011). CEPA has a statute of limitations of one year, which accrues on the date of an employee's termination. See Keelan v. Bell Commc'ns Res., 674 A.2d 603, 608 (N.J. Super. Ct. App. Div. 1996) (citing N.J.S.A. 34:19–5); Smith v. TA Operating LLC, 10 Civ. A 2563 (FLW), 2011 WL 3667507, at *3 (D.N.J. Aug. 19, 2011). Because Elliott was terminated, at the latest, when his appeal was denied in September 2010, and he filed his complaint on July 26, 2013, he is time-barred from asserting a claim under CEPA.

---

[9] A "statute of limitations" is a law that bars a plaintiff from filing claims after a specified period, measured from the time the claim is said to have accrued, e.g., from the time a plaintiff sustained an injury or was terminated from his employment.

> Statutes of limitation . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

Order of R.R. Telegraphers v. Ry. Express Agency, 321 U.S. 342, 348-49 (1944).

Second, a terminated employee may bring a claim under New Jersey law when the

termination "is contrary to a clear mandate of public policy." Pierce v. Ortho Pharm. Corp., 84

N.J. 58, 417 (N.J. 1980); see Russelman, 2012 WL 3038589, at *4. A claim under this theory has

a two-year statute of limitation. O'Lone v. N.J. Dep't of Corr., 712 A.2d 1177, 1180 (App. Div.

1998). Elliot is thus time-barred from asserting a claim for termination in violation of public

policy.

Finally, New Jersey recognizes claims for retaliatory termination in response to an

employee's filing of a claim under the state's Workers' Compensation Act. Elliott however is

prevented from alleging a claim under this law because of its two-year statute of limitations.

Labree v. Mobil Oil Corp., 692 A.2d 540, 545 (App. Div. 1997).

Thus, because Elliott's allegations of wrongful termination under the potential sources of

New Jersey law are time-barred, the Court must dismiss his claims on these grounds.

**B.      Breach of Employment Contract**

Under New Jersey law, an employer generally may terminate an employee for any

reason, or for no reason, unless an agreement exists between the parties stating otherwise.

Monaco v. Am. Gen. Assurance Co., 359 F.3d 296, 308 (3d Cir. 2004); Russelman, 2012 WL

3038589, at *3. "Under New Jersey law, employment is presumed to be 'at will'. . . ." Varrallo v.

Hammond, Inc., 94 F.3d 842, 845 (3d Cir. 1996). "The at-will presumption may only be

overcome where such intention is 'specifically stated in explicit, contractual terms.'" Anderson

v. DSM N.V., 589 F. Supp. 2d 528, 534 (D.N.J. 2008) (quoting Bernard v. IMI Sys., Inc., 131

N.J. 91, 106 (1993); see Webster v. Dolgencorp, LLC, 13 Civ. A. 0690 (JEI), 2013 WL 4501461,

at *5 (D.N.J. Aug. 22, 2013). Where there is no explicit contract between the parties, however,

such an agreement may be inferred from the terms of a widely distributed employee manual. See

19

Woolley v. Hoffman La Roche, Inc., 99 N.J. 284 (1985), modified by 101 N.J. 10. "To state a claim for breach of an implied contract created by an employment manual, a plaintiff must point to some language in the manual that contains 'an express or implied promise concerning the terms and conditions of employment.'" Ruffo v. Wawa, Inc., 09 Civ. 5264 (RBK)(JS), 2010 WL 1491714, at *3 (D.N.J. Apr. 13, 2010) (quoting Witkowski v. Thomas J. Lipton, Inc., 643 A.2d 546, 550 (N.J. 1994)).

A plaintiff must allege the following elements to state a claim for breach of contract under New Jersey law: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007).

Here, Elliott appears to concede that he is an "at-will employee," but states that NWNA has "written policies that require good cause to fire [an employee]." (Supp. Opp'n at 4.) Elliott alleges no further facts as to these written policies, nor does he submit any document referencing the terms of his employment as an exhibit. Elliott does not allege that any employment agreement exists and he does not identify any language in an employment manual containing an implied promise as to his employment, nor does he identify the source of the alleged "written policies." Elliott thus has not plead sufficiently that any agreement exists.

In the absence of an agreement or implied promise, Elliott does not pleads facts sufficient to allege that NWNA policies, such as providing a human resources representative to assist a terminated employee's internal appeal, either apply to Elliott or bind NWNA. Similarly, unless there is an agreement stating otherwise, NWNA had no obligation to provide Elliott with a letter or notice upon termination. See State of New Jersey Department of Labor and Workforce Development, Employer Frequently Asked Questions, http://lwd.dol.state.nj.us/labor/wagehour/

content/wage_and_hour_compliance_faqs.html (last visited Feb. 6, 2014) ("Notice is not required by either party based on the fact that New Jersey is an 'employment at will' state, meaning that an employer or employee may terminate the relationship at any time, without a reason, without cause."); cf. In re Katrina Canal Breaches Consol. Lit., 533 F. Supp. 2d 615, 632 (E.D. La. 2008) (collecting cases from multiple circuits finding that courts may take judicial notice of information on government agency websites). Therefore, Elliott fails to allege facts sufficient to state any claims on a breach of contract theory.

### C.    Discrimination

The Court first notes that Elliott could not state a claim under the New Jersey Law Against Discrimination because it would be barred by the law's two-year statute of limitations. Webster, 2013 WL 4501461, at *3 (citing Montells v. Haynes, 133 N.J. 282, 286 (1993)).

Second, to the extent that Elliott alleges facts that NWNA retaliated against him on account of a disability, he is time-barred from stating such a claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) et seq., or the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 et seq. A plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory act in order to bring a lawsuit alleging claims under Title VII or the ADA. See 42 U.S.C. § 2000e-5(e)(1) (Title VII); 42 U.S.C. § 12117 (ADA); Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000); Predun v. Shoreham-Wading River Sch. Dist., 489 F. Supp. 2d 223, 227 (E.D.N.Y. 2007). A plaintiff must then receive a "right to sue" letter from the EEOC and then, within 90 days, file his claim in federal court. Tiberio v. Allergy Asthma Immunology of Rochester, 664 F.3d 35, 37 (2d Cir. 2011).

21

Elliott alleges that he did not file charges with the EEOC within 300 days of his termination because of NWNA's failure to file timely an accident report and the inaccurate information it provided to the New York Workers' Compensation Board. "Although *pro se* litigants are usually offered leniency, when it comes to statutory filing deadlines courts have consistently held that even *pro se* plaintiffs must be held to strict compliance." Pryor v. Nat'l Grid, 10 Civ. 6507 (PAC)(THK), 2011 WL 3251571, at *2 (S.D.N.Y. July 28, 2011) (discussing a Title VII claim). Nevertheless, Elliott appears to allege grounds for equitable tolling. Equitable tolling of the statutory deadlines under Title VII and the ADA "is only appropriate in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights." Zerilli–Edelglass v. N.Y.C. Transit Auth., 333 F.3d 74, 80 (2d Cir. 2003) (internal quotation marks omitted). To warrant equitable tolling of Title VII and ADA deadlines, a plaintiff must demonstrate that he "'has been pursuing his rights diligently [and] that some extraordinary circumstance stood in his way and prevented timely filing.'" Wen Liu v. Mount Sinai Sch. of Med., 09 Civ. 9663 (RJS), 2012 WL 4561003, at *4 (S.D.N.Y. Sept. 24, 2012) (quoting Lawrence v. Florida, 549 U.S. 327, 336 (2007)). "It is not easy for a plaintiff to establish entitlement to an equitable toll. A plaintiff bears the burden of demonstrating that he or she is entitled to equitable tolling." Id. (citing Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 512 (2d Cir. 2002)).

Elliott failed to file his charge with the EEOC within 300 days, and he does not state that he ever received a right to sue letter. Elliott's claim that NWNA prevented him from filing the EEOC charge within 300 days by filing his accident report eight days after his termination and by erroneously reporting that his workers' compensation case was in New Jersey are unavailing. It is not clear how these alleged facts would impede Elliott from filing an EEOC charge, and they

22

certainly do not present an "extraordinary circumstance" that prevented him from filing the charge within 300 days. The Court further notes that Elliott filed a discrimination claim with the New York Workers' Compensation Board within 300 days of his termination. There is no clear reason why he could not have also filed such a charge with the EEOC within that timeframe. Elliott has not shown the "exceptional circumstances" that would entitle him to equitable tolling of the Title VII or ADA deadlines. Therefore, any claim that might be cognizable under Title VII or the ADA must be dismissed as time-barred.

Additionally, to the extent Elliott alleges he was discriminatorily terminated for filing his workers' compensation, the Court finds that this claim would be barred by the doctrine of collateral estoppel. Prior to this litigation, the New York Workers' Compensation Board issued a final judgment dismissing Elliott's Workers' Compensation Law § 120 complaint, in which he alleged that NWNA terminated him due to his on-the-job injury and request for medical treatment. Collateral estoppel "applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." Epperson v. Entertainment Express, Inc., 242 F.3d 100, 108 (2d Cir. 2001). Because the only issue properly before the New York Workers' Compensation Board was whether NWNA terminated Elliott in retaliation for filing a workers' compensation claim, that is the only issue the Court finds precluded under this doctrine. Cf. Williams v. Brooklyn Union Gas Co., 819 F. Supp. 214, 231 (E.D.N.Y. 1993) ("As Section 120 [of the Workers' Compensation Law] provides a remedy to employees alleging retaliatory discharge, that section is exclusive and no cause of action for such a claim exists in

the federal district court. Accordingly, defendant's motion for summary judgment as to

plaintiff's retaliatory discharge claim is hereby granted.").

## IV.     Wage and Hour

Elliott alleges facts regarding absences during which he claims he should have been paid.

Elliott's claims, however, are time-barred under New Jersey's Wage and Hour Law's two-year

statute of limitations. Moeck v. Gray Supply Corp., 03 Civ. 1950 (WGB), 2006 WL 42368, at *4

(D.N.J. Jan. 6, 2006). Elliott also fails to state a claim regarding NWNA's alleged denial of meal

breaks because, in New Jersey, employers are not required to provide meal breaks to adult

employees. See State of New Jersey Department of Labor and Workforce Development, Wage

and Hour Compliance FAQs, http://lwd.dol.state.nj.us/labor/wagehour/content/wage_and_hour

_compliance_faqs.html (last visited Feb. 6, 2014) ("Q. Are breaks and lunches required by law?

A. The mandatory break law only applies to minors under the age of 18 . . . . Company policy

dictates break and lunch periods for anyone over the age of 18.").

## V.     Leave to Amend

Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend a party's

pleading "shall be freely given when justice so requires." This is so because "mere

technicalities" in the pleadings should not prevent cases from being decided on the merits.

Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000) (citing Foman v. Davis,

371 U.S. 178, 181 (1962)). A district court has discretion whether to grant or deny leave to

amend. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007). "Leave to

amend, though liberally granted, may properly be denied for: undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

24

of amendment, etc." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (internal

quotation marks omitted); Foman, 371 U.S. at 181-82. "Where the 'problem with [a complaint]

is substantive [and] better pleading will not cure it,' leave to amend should be denied as futile."

Leary, 2012 WL 1622611, at *12 (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000)).

Elliott's claim that NWNA breached an implied employment contract by terminating him

without good cause is not plainly futile. In order to allege facts sufficient to state a claim,

however, Elliott must identify an agreement or the employment manual and point to the language

within that manual containing the promise that NWNA must have "good cause to fire" an

employee. (Supp. Opp'n at 4.) Elliott is further advised that such an implied promise may not be

enforceable if the employment manual contains "a clear and prominent disclaimer" stating that

employees are employed at will and may be terminated without cause. See  Woolley, 99 N.J. at

285; Witkowski, 136 N.J. at 392. Elliott must then allege facts sufficient to show that NWNA

breached this agreement, that Elliott was damaged by the breach, and that Elliott had sufficiently

performed his obligations under the contract. See Frederico, 507 F.3d at 203. The Court thus

recommends granting Elliott leave to amend his complaint consistent with the above guidelines

as to a contract claim only. As to all other claims discussed in this order, the Court finds they are

either time-barred or precluded and thus would be futile to amend.

## CONCLUSION

For these reasons, I recommend that NWNA's motion to dismiss be GRANTED in its

entirety, WITH LEAVE TO AMEND as to the implied contract claim only, and WITHOUT

LEAVE TO AMEND as to all remaining claims.

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:    New York, New York
          February 06, 2014

cc:       Donald Elliott (*By Chambers*)
         18 Wlodarczyk Place
         Parlin, NJ 08859