**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

DONALD ELLIOTT, JR.,

                           Plaintiff,

        -against-

NESTLE WATERS NORTH AMERICA INC.,

                        Defendants.

-------------------------------------------------------------X

**13-CV-06331 (RA)(SN)**

**REPORT AND**
**RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE RONNIE ABRAMS:**

      This case arises out of claims of wrongful termination brought by the *pro se* plaintiff

Donald Elliott, Jr. ("Elliott") against the defendant Nestle Waters North America Inc.

("NWNA"). On May 6, 2014, the Honorable Ronnie Abrams granted Elliott leave to amend his

complaint as to a breach of an implied contract claim, and dismissed all of his other claims

without leave to amend. On October 10, 2014, Elliott filed an amended complaint. Before the

Court is NWNA's motion to dismiss the amended complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6) ("Rule 12(b)(6)").

      Because Elliott was an at-will employee and has not demonstrated the existence of an

implied employment contract prohibiting termination without good cause, the Court recommends

that NWNA's motion to dismiss be GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__ 3/3/2015

**BACKGROUND**

I.      **Factual Background**

Familiarity with the facts of this case is assumed. See Report and Recommendation ("R&R"), Feb. 6, 2015 (ECF No. 26). Of relevance here, Elliott began his employment as a delivery truck driver with NWNA on June 22, 2009. On that same day, he signed and dated numerous NWNA Human Resources policy agreements in Kearny, New Jersey, including: (1) a "How to Access Company Policies Acknowledgment and Agreement" (the "How To Agreement"), and (2) a "NWNA Employee Agreement, Acknowledgment and Agreement" (the "Employee Acknowledgment"). (ECF Nos. 35 at 27, 39 at 51-55.) The How To Agreement states in part, "I understand that the Company reserves the right to revise its policies, *other than the at-will policy*, in its sole discretion, with or without notice, at any time." (ECF No. 35 at 27 (emphasis supplied).) The Employee Acknowledgment certifies that Elliott was "given a copy of and [has] read the NWNA Employee Agreement." (ECF No. 39 at 51.) In turn, the NWNA Employee Agreement states in relevant part, "I agree as follows: 1. *At Will Employment*. I understand and acknowledge that employment with the Company is for an unspecified duration and constitutes *at will employment*. This employment relationship may be terminated at any time, *with or without cause*, by me or the Company, *with or without notice*." (ECF No. 39 at 52 (emphasis supplied).)

On July 27, 2010, NWNA terminated Elliott's employment, citing his poor attendance record as cause.

II.     **Procedural Background**

On July 26, 2013, Elliott filed his complaint in the New York Supreme Court for the County of New York against NWNA, alleging wrongful termination. On September 10, 2013,

NWNA removed this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1441, based on diversity jurisdiction. (ECF No. 1.) On September 16, 2013, NWNA moved to dismiss Elliott's complaint under Rule 12(b)(6). (ECF Nos. 3-7.) Along with its motion, NWNA filed the affirmation of Ian W. Siminoff. (Id.) Elliott opposed the motion on October 11, 2013, attaching various documents, and, on October 16, 2013, filed a supplemental letter of opposition requesting permission to submit additional documents, which he attached. (ECF No. 14.) In his pleadings, Elliott indicated that he was an "at-will employee" but that NWNA had "written policies that require good cause to fire [an employee]." (ECF No. 16 at 4.) He stated that his termination violated NWNA attendance policy, which provided that if an employee presented a doctor's note, any missed days within the timeframe stated in the note would be counted collectively as one absence. (ECF No. 14 at 8-9.) See also R&R (ECF No. 26). On October 29, 2013, NWNA filed its reply in support of its motion to dismiss, along with a second affirmation of Ian W. Siminoff. (ECF Nos. 19-21.)

On February 6, 2014, the Court issued an R&R, recommending that Elliott's claims be dismissed with prejudice but that he be granted leave to amend his claim for breach of an implied contract. (ECF No. 26.) The Court instructed Elliott that to allege facts sufficient to state such a claim, he "must identify an agreement or the employment manual and point to the language within that manual containing the promise that NWNA must have 'good cause to fire' an employee." (Id. at 25.) It "further advised [him] that such an implied promise may not be enforceable if the employment manual contains 'a clear and prominent disclaimer' stating that employees are employed at will and may be terminated without good cause." (Id.) The Court also undertook a choice of law analysis and concluded that New Jersey, rather than New York, law applied. (Id. at 16-17.)

On May 6, 2014, Judge Abrams adopted the Court's R&R, dismissing Elliott's claims with prejudice but granting him leave to amend the sole claim as to a breach of an implied contract. (ECF No. 27.) Elliott filed untimely objections to the R&R on July 11, 2014 (ECF No. 29), which Judge Abrams declined to consider (ECF No. 33). Judge Abrams granted Elliott an extension to file an amended complaint until October 10, 2014, and directed Elliott to refer to pages 19-21 and 25 of the R&R because "to state a plausible breach of implied employment contract claim based on this alleged promise, [he] must allege facts showing that the NWNA actually made this promise." (Id.)

On October 10, 2014, Elliott filed an amended complaint, with attachments. (ECF No. 35.) The amended complaint reaches beyond the limited basis for which Elliott was granted leave to amend and avers that NWNA failed to comply with its attendance, sick, appeal, discrimination, retaliation, and harassment policies when terminating him. (ECF No. 35.) It asks the Court to review its choice of law determination and argues that New York law should apply. (Id. at 1.) It further states:

> I regret that i don't have the company policies on hand but i submit as proof (EXHIBIT D) company acknowledgment and agreement that these policies do exist. i signed this agreement on 6/22/2009 . . . . The types of employment promises commonly found in handbooks are commitments and promises Nestle Waters made to me to terminate only for cause or only following progressive discipline. . . . i have amended my complaint to breach of implied employment contract because Nestle Waters personnel policies and handbooks indicate that an employee will not be fired except for good cause or specify a process for firing.

(ECF No. 35 at 2, 3, 6.) Exhibit D of the amended complaint is the "How to Agreement." (ECF No. 35 at 27.) To support the presence of an implied contract, Elliott also submits, as Exhibit E to the amended complaint, a statement from NWNA's Appeals Kit, "Our Philosophy," which

4

states, "policies, procedures and the Company's Aspirations and beliefs will be consistently applied throughout the organization." (Id. at 6, 30.) In addition to Exhibits D and E, Elliott submits the following documents to support his claim(s): (1) New York State Department of Taxation and Finance Statement of Employer-Reported Wages, dated July 21, 2011; (2) Notice of Claimant Benefit Determination from New Jersey Department of Labor Unemployment Insurance Office; (3) transcript excerpts from hearings on October 25, 2010, and November 30, 2011, before the New York Workers' Compensation Board; (4) Email from NWNA Northeast Division Recruiter Michelle Martino, dated August 6, 2009; (5) transcript excerpts from a September 2010 "termination hearing"; (6) medical note, dated May 15, 2010, by Dr. Prakash H. Shah, that Elliott had bronchitis; (7) International Brotherhood of Teamsters Local Union 295 Official Receipt, dated October 20, 2010; and (8) Letter from Nationwide Better Health dated August 12, 2010, denying Elliott relief under the Family and Medical Leave Act. (ECF No. 35 at 8-45.)

On October 28, 2014, NWNA moved to dismiss Elliott's amended complaint under Rule 12(b)(6). (ECF Nos. 36-40.) Along with its motion, NWNA filed a supporting memorandum of law, notice of *pro se* litigant who opposes a Rule 12 Motion, affirmation of Ian W. Siminoff with exhibits, and affidavit of service. (Id.) Exhibit B to Siminoff's affirmation includes the How To Agreement, and the newly submitted Employee Acknowledgment and NWNA Employee Agreement. (ECF No. 39 at 51-55.)

On December 2, 2014, Elliott opposed NWNA's motion to dismiss and submitted as Exhibits A-N additional documents. (ECF No. 43.) In his opposition, he explains that NWNA unjustifiably terminated him due to his attendance and that "being an AT-WILL employee was never used as a reason for [his] termination" (Id.) He alleges that NWNA breached its obligation

5

to act with "honesty and integrity," and that he is unable to identify the requisite implied contract or "good cause" termination language because NWNA has not provided him with a full copy of its employee handbook. (ECF No. 43 at 3-4.) Elliott submitted the following documents to his opposition: (1) the "Culture and Values" page from the NWNA website (Ex. A.); (2) transcript excerpts from hearings on October 25, 2010 and November 30, 2011, before the New York Workers' Compensation Board (Exs. B-C, & N); (3) NWNA Report of Performance Problem Resolution, dated June 18, 2010 (Ex. D); (4) New York Workers' Compensation Board Panel Decision, dated March 27, 2014 (Ex. E); (5) Workers Compensation First Report of Injury Or Illness, dated August 4, 2010 (Ex. F); (6) Concentra Medical Centers Physician Activity Status Reports, dated July 19 and 26 and August 2 and 19, 2010 (Exs. G-I, & K); (7) Sedgwick Claims Management Services Letter, dated August 5, 2010 (Ex. J); (8) Dr. Richard Selders Initial Orthopedic Evaluation, dated August 13, 2010 (Ex. L); and (9) New York Workers' Compensation Board Decision, dated November 4, 2012 (Ex. M). (ECF Nos. 43-1–42-2, 54 at 25.)

On December 18, 2014, NWNA filed a reply memorandum of law, along with a certification of the NWNA Human Resources Manager Christie Fenton. (ECF Nos. 49-51.) Mrs. Fenton declares that during Mr. Elliot's NWNA employment, NWNA did not have an employee handbook or any "document or policy which provided that NWNA needed good, or any, cause to terminate Mr. Elliott's employment." (ECF No. 50.) Rather, NWNA had stand-alone employee policies that Mr. Elliott acknowledged in writing when he was hired. (Id.)

On December 22, 2014, Elliott filed an amended opposition to NWNA's motion to dismiss the amended complaint to correct technicalities in the version he filed on December 2,

2014. (ECF No. 54.) Other than a few corrections, the two submissions are identical. (ECF Nos. 43, 54.)

## DISCUSSION

### I.  Standard of Review

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must take "factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985) (citation omitted). The Court should not dismiss the complaint if the plaintiff has provided "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that [the Court] must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

When the plaintiff is proceeding *pro se*, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that [it] suggest[s]." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted); see Haines v. Kerner, 404 U.S. 519, 520–21 (1972). "Even in a *pro se* case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis, 618 F.3d at 170 (internal quotation marks omitted). Thus, although the Court is

"obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." <u>Id.</u>

## II.     Extrinsic Documents

When ruling on a Rule 12(b)(6) motion, a court "must confine itself to the four corners of the complaint." <u>Staehr v. Hartford Fin. Servs. Grp., Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008) (internal quotations and citation omitted). The "four corners of the complaint" include "any documents attached to that pleading or incorporated into it by reference, any documents that are 'integral' to the plaintiff's allegations even if not explicitly incorporated by reference, and facts of which the court may take judicial notice." <u>BLT Rest. Grp. LLC v. Tourondel</u>, 855 F. Supp. 2d 4, 15 (S.D.N.Y. 2012). <u>See</u> <u>Taylor v. Vt. Dep't of Educ.</u>, 313 F.3d 768, 776 (2d Cir. 2002); <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002); <u>Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria</u>, 265 F.R.D. 106, 122 (S.D.N.Y. 2010); <u>Rosario v. Local 1106 Transp. Works of Am.</u>, 13 Civ. 400 (PKC), 2014 WL 297246, at *3 (E.D.N.Y. Jan. 27, 2014) (citing <u>Rothman v. Gregor</u>, 220 F.3d 81, 88 (2d Cir. 2000)). "[M]ere notice or possession [of documents] is not enough." <u>Chambers</u>, 282 F.3d at 153. Rather, "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." <u>Id.</u> (emphasis in original). If "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," rather than as a motion to dismiss under Rule 12(b)(6). Fed. R. Civ. P. 12(d).

Both NWNA and Elliott submitted documents that were not attached to the amended complaint and ask the Court to consider them. The Court address NWNA's submissions first. NWNA attached as Exhibit B to its motion to dismiss: (1) the one-page Employee

Acknowledgment, signed and dated June 22, 2009 by Elliott, and stamped as page five, (2) the three-page NWNA Employee Agreement, stamped as pages one through three, and (3) the one-page How To Agreement, signed and dated June 22, 2009 by Elliot. (ECF No. 39 at 51-55.) The How To Agreement is the same document as Elliott's Exhibit D to his amended complaint, but the first four pages of NWNA's Exhibit B are new submissions. (ECF No. 35 at 27.) Thus, the Court must determine whether it can properly consider the Employee Acknowledgment and NWNA Employee Agreement in resolving this motion, whether the documents should be excluded, or whether the Court should consider them and convert this motion to dismiss to a motion for summary judgment under Rule 56. See Madu, 265 F.R.D. at 122.

As an initial matter, the How To Agreement is the same document that the Court previously excluded from its consideration in its R&R because it was outside the scope of the original complaint. (ECF No. 26 at 14 ("While Elliott most likely knew about and possessed the [How To Agreement] when he drafted his complaint, there is no indication that he either referenced it in the complaint or relied upon it to draft his complaint.")). Now that Elliott has referenced, relied on, and attached it to his amended complaint, however, it is part of the "four corners of the complaint" which the Court may consider.

Second, the How To Agreement states, in part, that the signatory "acknowledge[s] that the following policies were reviewed with [him] by a company representative and [that he] was given a hard copy" of them. (ECF Nos. 35 at 27, 39 at 55.) It then lists 14 different policies, including the NWNA Employee Agreement.[1] (Id.) Thus, the How To Agreement explicitly

---

[1] These 14 policies include: 1. Vacation Policy; 2. Drug Free Workplace Policy; 3. Personal Appearance Policy; 4. Information Systems Policy; 5. Business Conduct and Conflict of Interest Policy Statement; 6. Notice of Non-Harassment and Non-Retaliation Policy; 7. NWNA Employee Agreement; 8. Sick Leave Policy; 9. Safety Rules Policy; 10. Safe Work Practices; 11. Hazardous Communications Program; 12.

incorporates the three-page "NWNA Employee Agreement" that NWNA attached as part of Exhibit B to its motion to dismiss. (ECF No. 35 at 27.) As such, the Court may consider the NWNA Employment Agreement. See BLT Rest. Grp. LLC, 855 F. Supp. 2d at 15.

Lastly, NWNA also submitted the Employee Acknowledgment. This page, stamped as page five, appears to be the fifth page of the NWNA Employee Agreement (stamped pages one through three), although no page four has been submitted. This form is dated and signed by Elliott on June 22, 2009, the same day that Elliott signed the How to Agreement. The Court finds that the Employee Acknowledgment also is incorporated by reference in the How To Agreement and thus, the entirety of NWNA's Exhibit B to its motion to dismiss the amended complaint is within the scope of the amended complaint. Consequently, the Court may consider it pursuant to a 12(b)(6) motion to dismiss, rather than a motion for summary judgment. See BLT Rest. Grp., LLC, 844 F. Supp. 2d at 15; Fed. R. Civ. P. 12(d).

The Court also must address the new documents that Elliott attached as Exhibits A-N to his opposition to NWNA's motion to dismiss. (ECF Nos. 43-1–43-2.) At least portions of three of the exhibits (Exhibits B, C, and N) were already attached as exhibits to Elliott's amended complaint. Thus, these exhibits are duplicative of the documents already within the scope of the complaint and, to the extent they are not duplicative, are incorporated by reference therein. As to the opposition's other exhibits (Exhibits A, and D-M), the documents support only Elliott's arguments that NWNA failed to comply with several of its own policies, claims which were dismissed by Judge Abrams. None of them demonstrates an implied employment contract whereby NWNA in any way represented that Elliott was anything but an at-will employee. As a result, although they may be consistent with some allegations made in the complaint, they are

_____

Benefits Timeline Responsibility; 13. Attendance Policy; 14. Breaks Policy. (ECF Nos. 35 at 27, 39 at 55.)

irrelevant to the one surviving claim in this case and do "not shore up" what, for the reasons

stated below, is a deficient complaint. See Madu, 265 F.R.D. at 122-23. Accordingly, the Court

excludes them and has not considered them in reaching its decision.

## III.   Wrongful Termination

Under New Jersey law, employment is presumptively at-will.[2] Monaco v. Am. Gen.

Assur. Co., 359 F.3d 296, 308 (3d Cir. 2004); Varrallo v. Hammond, Inc., 94 F.3d 842, 845 (3d

Cir. 1996). The employment at-will doctrine provides that "an employer may fire an employee

for good reason, bad reason, or no reason at all." Russelman v. ExxonMobil Corp., 12 Civ. 752

(RBK)(AMD), 2012 WL 3038589, at *3 (D.N.J. July 25, 2012) (quoting Witkowski v. Thomas

J. Lipton, Inc., 136 N.J. 385, 643 (1994)); Monaco, 359 F.3d at 308. See also New Jersey

Department of Labor and Workforce Development, Employer Frequently Asked Questions,

http://lwd.dol.state.nj.us/labor/wagehour/content/wage_and_hour_compliance_faqs.html (last

visited Feb. 24, 2015) ("Notice is not required by either party based on the fact that New Jersey

is an 'employment at will' state, meaning that an employer or employee may terminate the

relationship at any time, without a reason, without cause."); cf. In re Katrina Canal Breaches

Consol. Lit., 533 F. Supp. 2d 615, 632 (E.D. La. 2008) (collecting cases from multiple circuits

finding that courts may take judicial notice of information on government agency websites).

The at-will presumption may be overcome, however, where "an agreement exists

between the parties that provides otherwise." Monaco, 359 F.3d at 308; Anderson v. DSM N.V.,

589 F. Supp. 2d 528, 534 (D.N.J. 2008) ("The at-will presumption may only be overcome where

such intention is specifically stated in explicit, contractual terms." (quoting Bernard v. IMI Sys.,

---

[2] The Court has already conducted a choice of law analysis and concluded that New Jersey is the
appropriate law to be applied in this case. See R&R (ECF No. 26), adopted by Opinion and Order (ECF
No. 27).

Inc., 131 N.J. 91, 106 (1993)). See also Webster v. Dolgencorp, LLC, 13 Civ. A. 0690 (JEI), 2013 WL 4501461, at *5 (D.N.J. Aug. 22, 2013); Russelman, 2012 WL3038589, at *3. For example, "[w]hen an employer of a 'substantial number of employees' circulates a personnel or policy manual containing a termination clause, the manual may be contractually enforceable." Bell v. KA Indus. Servs., LLC, 567 F. Supp. 2d 701, 710 (D.N.J. 2008) (quoting Woolley v. Hoffman La Roche, Inc., 99 N.J. 284, 297, modified on other grounds by 101 N.J. 10 (1985)).

The plaintiff has the burden of showing that contractual terms or an agreement exist. See Bell, 567 F. Supp. 2d at 710 (citing Woolley, 99 N.J. at 297). Thus, to state a claim for a breach of an implied contract, a "plaintiff must bring to the Court's attention some provision or language in the employment manual [or other agreement] that guarantees the employee will not be terminated except for good cause." Bell, 567 F. Supp. 2d at 710 (internal citations omitted) (dismissing breach of employment contract claim with prejudice on employer's 12(b)(6) motion to dismiss); Ruffo v. Wawa, Inc., 09 Civ. 5264 (RBK)(JS), 2010 WL 1491714, at *3 (D.N.J. Apr. 13, 2010) ("To state a claim for breach of an implied contract created by an employment manual, a plaintiff must point to some language in the manual that contains 'an express or implied promise concerning the terms and conditions of employment.'" (quoting Witkowski, 136 N.J. at 393). Where, however, an employment manual or personnel policy contains "a clear and prominent disclaimer" stating that employees are employed at-will and may be terminated without cause, the at-will presumption will be hard to overcome. Woolley, 99 N.J. at 285; Nicosia v. Wakefern Food Corp., 136 N.J. 401, 413-15 (1994) (clarifying what constitutes an "effective disclaimer" pursuant to Woolley).

Elliott fails to allege facts sufficient to state any claim on a breach of implied contract theory. He identifies no agreement and points to no provisions in the NWNA policies that

indicate a promise that NWNA needed "good cause" to fire him. To the contrary, the document that Elliott provides to support an implied contract, the How To Agreement, does the opposite. On its face, it provides "a clear and prominent disclaimer" stating that NWNA employees are employed at-will: "the Company reserves the right to revise its policies, *other than the at-will policy*, in its sole discretion, with or without notice, at any time." (ECF No. 35 at 27) (emphasis supplied). Cf. Webster, 2013 WL 4501461, at *6 (denying defendant's 12(b)(6) motion to dismiss where the employer's Acknowledgment Form indicated that "employees are employed at will by default" but "specifically contemplates that parties may agree otherwise," as well). Thus, not only does the How To Agreement not overcome the presumption of at-will employment, it explicitly reaffirms it.

The How To Agreement also references NWNA's fourteen policies, one of which, the "NWNA Employee Agreement," has a section dedicated to informing employees that they are at-will employees whose employment relationship with NWNA "may be terminated at any time, *with or without cause*, by [the employee] or the Company, with or without notice." (ECF No. 39 at 52 (emphasis supplied).) Elliott signed, and dated, both the How To Agreement and the NWNA Employee Agreement, thereby explicitly agreeing in writing that he was an at-will employee. See McBryde v. Continental Airlines, Inc., 09 Civ. 4112 (SRC), 2009 WL 3242133, at *2 (D.N.J. Oct. 6, 2009) (granting employer's 12(b)(6) motion where "[p]laintiff explicitly agreed in writing that he was an employee at will and may be terminated with or without cause or notice").

Elliott also alleges that NWNA breached its obligation to act with "honesty and integrity" and to comply with its own statement of "Philosophy." These promises are "too vague and unspecific" to sufficiently overcome NWNA's explicit at-will employment policy. Michaels v.

13

BJ's Wholesale Club, Inc., 2:11 Civ. 5657 (KM)(MCA), 2014 WL 2805098, at *17 (D.N.J. June 19, 2014) (holding that the employer's "alleged promise to treat employees 'fairly' is too vague and unspecific" to support the plaintiff's claim that his termination was a breach of contract (citing Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992))); Monroe v. Host Marriot Servs. Corp., 999 F. Supp. 599, 606 (D.N.J. 1998) (holding that a company's "Guarantee of Fair Treatment" was "lacking in specificity and explicit terms regarding job security and termination policies and is therefore not an employment contract capable of being breached."). The promises are an "expression of the Company's philosophy" but not "an implied promise sufficient to predicate a contract upon." Levinson v. Prentice-Hall, Inc., 85 Civ. 3440 (CSF), 1988 WL 76383, at *1 (D.N.J. July 22, 1988) ("Woolley [] does not, of course, render every provision in an employee manual to be an implied contract. . . . [T]here remains a distinction as to whether the content of the employee manual is an expression of the Company's philosophy or an implied promise sufficient to predicate a contract upon."), rev'd in part on other grounds, 868 F.2d 558 (3d Cir. 1989).

Elliott next argues that NWNA prevented him from accessing all of its policies, but that the How To Agreement proves that these other policies exist. This argument also fails to support his claim. NWNA's stand-alone polices (such as "Notice of Non-Harassment and Non-Retaliation," "Sick Leave," and "Attendance") exist, but their existence does not demonstrate an implied contract to terminate employees only for "good cause." Further, NWNA submits that its company has no employee handbook, other than these stand-alone policies and agreements, and no agreements, handbooks, or documents exists that provide "that NWNA needed good, or any, cause to terminate Mr. Elliott's employment." (ECF No. 50.) Therefore, it would be futile to allow Elliott an opportunity to seek out these other elusive polices he alleges support his claim.

14

In the absence of an agreement or valid implied promise, Elliott does not plead facts sufficient to allege that an implied employment contract existed and that NWNA breached it by terminating him without good cause.

## CONCLUSION

For these reasons, I recommend that NWNA's motion to dismiss be GRANTED.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:        New York, New York
             March 3, 2015

15

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Ronnie Abrams at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Abrams. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

cc:      Donald Elliott (*By Chambers*)
         18 Wlodarczyk Place
         Parlin, NJ 08859

16